**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **JOHN TRINIDAD QUALLS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-448-DB** |
| | § | |
| **CHARISMA EDGE,** *Warden*, **FCI La Tuna,** | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner John Trinidad Qualls, Federal Prisoner Number 52454-510, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is dismissed.

## BACKGROUND

Qualls is a 45-year-old prisoner who was confined to the La Tuna Federal Correctional Institution in Anthony, Texas, when he filed his petition. *Id.* He is now incarcerated at the Federal Correctional Institution in Texarkana, Texas. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 52454-510, last visited Apr. 24, 2026). His projected release date is December 20, 2030. *Id*.

Qualls pleaded guilty to possessing drugs after officers discovered two bags of methamphetamine in his car during a traffic stop in Iowa on December 31, 2022. *United States v. Qualls*, No. 24-1502, 2025 WL 1672154, at *1 (8th Cir. June 13, 2025). He was sentenced on February 26, 2024, to 121 months' imprisonment followed by five years' supervised release. *United States v. Qualls*, 6:23-cr-02021-CJW (N.D. Iowa), J. Crim. Case, ECF No. 73.

Qualls alleges that Respondent Warden Chrisma Edge has not properly calculated his Good Time Credits (GTCs), First Step Act Earned Time Credits (FTCs), and Second Chance Act Credits. Pet'r's Pet., ECF No. 1 at 1. Specifically, he complains he did not receive FTCs while in federal

custody between his arrest on December 31, 2022, and his sentencing on February 26, 2024. He also complains he has not received any Second Chance Act Credits. *Id*. at 2. He argues he is not required to exhaust his administrative remedies "[b]ecause Habeas Corpus under U.S.C. § 2241 is a constitutional right [and] there can be no rule making which would abrogate [it], such as regarding exhaustion of administrative remedies." *Id.* at 5. He asks the Court to issue an order directing Warden Edge to "properly provide all Good Time, First Step Act, and Second Chance Act Credits" to which he believes he is entitled. *Id.*

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

The Fifth Circuit has long held that a prisoner should permit the Bureau of Prisons (BOP) to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the]

prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances.

Qualls does not claim that he exhausted his BOP administrative remedies or that any exception to the exhaustion requirement applies. *See* Pet'r's Pet., ECF No. 1 at 5. His prison records show he "has not filed any administrative remedy request regarding the claims raised in this petition while in BOP custody." Gov't's Resp., Ex. 1 (Decl. of Christing Wohld), ECF No. 3-2 at ¶ 20. He argues that he need not exhaust because habeas corpus under § 2241 is a constitutional right and an exhaustion requirement would abrogate his constitutional right. Pet'r's Pet., ECF No. 1 at 5. But he is wrong. *Setser*, 607 F.3d at 133.

Consequently, Qualls "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all

3

administrative deadlines and procedures established by the BOP. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

The Court finds that Qualls has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Qualls had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

**B. Alternatively, Qualls's Petition Lacks Merit**

Qualls alleges Edge has not properly calculated his Good Time Credits (GTCs), First Step Act Earned Time Credits (FTCs), and Second Chance Act Credits. Pet'r's Pet., ECF No. 1 at 1.

**(1) Jail Credits**

Qualls' sentence commenced when the Iowa Court pronounced judgment on him on February 26, 2024, and he received 422 days of jail credit for the time he spent in detention between his arrest on December 31, 2022, and his sentencing. Gov't's Resp., Ex. 1 (Decl. of Christing Wohld), ECF No. 3-2 at ¶ 15. Without the application of any GCTs or FTCs, his full-term expiration date was established as January 27, 2033.

**(2) Good Time Credits (GTCs)**

Qualls was not eligible to earn GTCs before he was sentenced. *See* 18 U.S.C. § 3624(b)(1) ("a prisoner who is serving a term of imprisonment of more than 1 year … may receive credit toward the service of the prisoner's sentence"). Once he was sentenced, however, he received 54

days of GTCs for each year of his sentence. *Id*. In other words, he received a total of 544 days of GCTs for his 121-month sentence.   Gov't's Resp., Ex. 1 (Decl. of Christing Wohld), ECF No. 3-2 at ¶ 15. The application of these GCTs to his full-term expiration date resulted in a projected release date via GCTs of August 2, 2031. This is the date Qualls will be released from prison, without considering his FTCs, assuming he does not lose any GTCs due to disciplinary infractions.

### (3) First Step Act Earned Time Credits (ETCs)

The First Step Act allows an eligible prisoner to earn FTCs toward time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). But it requires a prisoner to first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism." *Id*. § 3632(a)(1). And it only gives qualifying prisoners the opportunity to earn ten days of FTCs for every 30 days of successful participation in Evidence Based Recidivism Reduction (EBRR) programs and Productive Activities (PAs). *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id*. § 3632(d)(4)(A)(ii). It permits qualifying inmates to apply FTCs toward prerelease community-based placement in a residential reentry center or home confinement. 18 U.S.C. § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

Qualls was ineligible to earn FTCs while in official detention between his arrest and his sentencing. 18 U.S.C. § 3632(d)(4)(B) (explaining an inmate may not earn FTCs "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)."); *Id.* §

5

3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."). He was not eligible to earn FTCs until he was (1) sentenced, and (2) in custody awaiting transportation to his BOP designated facility.

Qualls arrived at his designated BOP facility on September 24, 2024, at which point he started accruing FTCs. Gov't's Resp., Ex. 1 (Decl. of Christing Wohld), ECF No. 3-2 at ¶ 11. He began earning ten days of FTCs for every 30 days of successful participation in EBRR programs and PAs. *Id.* at ¶ 12. After his second consecutive low risk assessment for recidivism, he began earning an additional five days of time credits. As of October 31, 2025, Qualls had accrued 361 program days, which equated to an earned total of 150 days of FTCs. *Id.* at ¶ 13. With application of 150 days of FTCs toward his early release to supervision, his projected release date became March 5, 2031. If Qualls' status remains the same throughout the remainder of his sentence, he is projected to earn sufficient additional FTCs for his early release to supervision on August 2, 2030.

**(4) Second Chance Act**

The Second Chance Act authorizes the Bureau of Prisons (BOP) to consider, to the extent practicable, placing inmates nearing the end of their sentences in pre-release community confinement. 18 U.S.C. § 3624(c). Importantly, the statute only requires the BOP to *consider* placing an inmate in pre-release custody for up to twelve months or in home confinement for up to six months. It does not *require* the BOP to make such a placement. It does not create any additional "credits" toward a prisoner's release.

Moreover, the BOP is responsible for designating "the place of the prisoner's

imprisonment." *Id.* § 3621(b). Consequently, the BOP—not a court—is the proper place to direct a request for placement in a residential reentry center or in home detention. *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995) (citing 18 U.S.C. § 3624(c) (providing that the BOP has the authority to "place a prisoner in home confinement")). Additionally, release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241." *Maldonado v. Rule*, No. 4:24-cv-0971-P, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (explaining a challenge to exclusion from program allowing home confinement is more properly brough as a *Bivens* action)). As a result, a claim regarding pre-release custody in a residential reentry center or home confinement is not a cognizable habeas claim. *Mosley v. Reiser*, No. 3:21-cv-394-TSL-RPM, 2022 WL 16572029, at *2 (S.D. Miss. Nov. 1, 2022), *aff'd*, No. 22-60625, 2023 WL 3947169 (5th Cir. June 12, 2023).

### (5) Summary

In summary, Qualls does not explain how the BOP erred in its calculation of his projected release date—and the Court after reviewing the record sees no errors. His argument that he is entitled to Second Chance Act "credits" is based on the erroneous premise that such credits exist. His suggestion that he is entitled to relief because the BOP is involved in a scheme to defraud the United States by denying him sentencing credits is not evident in the record of these proceedings. Reply, ECF No. 4 at 7.

### CONCLUSIONS AND ORDERS

The Court concludes that Qualls has failed to exhaust his administrative remedies. It further concludes that his claims lack merit as he has failed to explain how the BOP erred in calculating

7

his projected release date. The Court accordingly enters the following orders:

IT IS ORDERED that Petitioner John Trinidad Qualls' "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

IT IS FURTHER ORDERED that all pending motions are **DENIED**.

IT IS FINALLY ORDERED that the District Clerk shall **CLOSE** this case.

SIGNED this **27th** day of **April 2026**.

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**